**Electronically Filed
Intermediate Court of Appeals
30495
15-NOV-2012
09:39 AM**

NO. 30495

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
SARA H. MUNSON, Defendant-Appellant.


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CR. NO. 09-1-0328(1))

MEMORANDUM OPINION
(By: Nakamura, C.J., and Fujise and Ginoza, JJ.)

Defendant-Appellant Sara H. Munson (Munson) was convicted of first-degree burglary, in violation of Hawaii Revised Statutes (HRS) § 708-810(1)(c) (1993)[1] (Count 1), and third-degree assault, in violation of HRS § 707-712(1)(a) (1993)[2] (Count 2), in the Circuit Court of the Second Circuit

---

[1] HRS § 708-810(1)(c) provides:

    (1)   A person commits the offense of burglary in the first degree if the person intentionally enters or remains unlawfully in a building, with intent to commit therein a crime against a person or against property rights, and:

    . . .

    (c)   The person recklessly disregards a risk that the building is the dwelling of another, and the building is such a dwelling.

[2] HRS § 707-712(1)(a) provides:

    (1)   A person commits the offense of assault in the third degree if the person:

    (a)   Intentionally, knowingly, or recklessly causes bodily injury to another person[.]

(Circuit Court).[3/]  On appeal, Munson contends that: (1) the Circuit Court plainly erred in allowing testimony that was elicited by defense counsel of Munson's alleged prior bad act; (2) the Circuit Court plainly erred in failing *sua sponte* to give a limiting instruction regarding that testimony; and (3) there was insufficient evidence to support the jury's guilty verdicts on the charges of first-degree burglary and third-degree assault. As explained below, we affirm.

BACKGROUND

I.

The complaining witness, Ashley Griffin (Griffin), lived with her fiancé, Shane Kapu (Kapu), and her two infant children in an apartment unit in Lahaina.  Griffin had known Munson for ten years and had considered her a good friend until January 2009.

On direct examination, Griffin testified, however, that in January 2009, there was an argument at her house that involved Munson, Griffin, and Kapu.  After this argument, Griffin intentionally had no contact with Munson until March 21, 2009, the date of the charged incident.

On cross-examination, defense counsel elicited details concerning the January 2009 argument, including that Griffin's mother had also been involved.  Defense counsel elicited the following information from Griffin:

> Q.    Now, this argument in January, we don't have time to hear all the details, but can I ask for a couple, please?
>
> A.    Yes.
>
> Q.    Did the argument end up involving [Kapu]?
>
> A.    Absolutely.
>
> Q.    Okay.  Who did [Kapu] get mad at, and who was mad at [Kapu], if anyone?

---

[3/] The Honorable Joel E. August presided.

A.    [Kapu] asked [Munson] to leave his home with her children, and she didn't.  She got in his face and called him out.

. . . .

Q.    As a result of the argument, did it get loud?

A.    Ah, yeah, very.

Q.    Okay.  And was it loud enough that someone actually, maybe a neighbor, called the cops?

A.    They all.  All of 'em.

Q.    All right.  Was there anything physical or was it just words?

A.    There was physical activity.

Q.    What was physical?

A.    [Munson] attacked my mother.

Q.    Really?

A.    Yes.

Q.    Was that ever documented?

A.    Idiotically my mother did not make a report.

(Emphasis added.)  Defense counsel did not object to Griffin's testimony that Munson had attacked Griffin's mother during the January 2009 argument, did not move to strike that testimony, and did not request a limiting instruction.

During her testimony, Griffin described what happened on March 21, 2009, in the early morning hours.  Griffin testified that she was sleeping in her bed with her two infant children. Kapu, who worked as security for the apartment complex where they lived, was working the 10:00 p.m. to 6:00 a.m. "graveyard shift[]" and was not at home.  An oven light in the kitchen was on, but other lights in the kitchen, livingroom, and Griffin's bedroom were turned off.

A little past 2:00 a.m., Griffin awoke in her bed to find Munson standing in the bedroom doorway.  Munson was calling Griffin's name in a "[v]ery, very loud" tone of voice.  Griffin had not allowed or invited Munson to enter her residence; Griffin

did not hear Munson knock on the door or hear Munson ask for permission to enter the residence.

Griffin was afraid because she could tell by Munson's actions that Munson "wanted to be aggressive and probably fight." Griffin asked Munson to leave or they were "going to get into it." Munson replied, "let's get into it," and a verbal argument ensued. Griffin picked up her four-month-old daughter and placed her daughter in front of her chest because she was unclothed, she was scared, and she felt that Munson would not attack her while she was holding her baby. While holding her baby, Griffin attempted to walk around Munson to get to a phone to call the police. Munson "jolted and attacked" Griffin by choking Griffin. Griffin had not attempted to make contact with Munson or done anything aggressive toward Munson before Munson attacked and began choking Griffin. While still holding her baby, Griffin struggled with Munson to escape from the choke hold and was thrust against the refrigerator in the kitchen. Griffin kicked Munson three times before Munson released Griffin. After releasing Griffin, Munson left the apartment and got into the passenger side of her car, which was positioned in the fastest way to exit the parking lot, and the car drove away.

Griffin could tell that Munson had been drinking "[b]y her slurred speech and [her] staggering in [Griffin's] doorway." As the result of Munson' attack, Griffin's throat was sore, she sustained three big scratches on the left side of her neck and one scratch on the right, and she was bleeding. Griffin reported the incident and her injuries to the police.

After counsel for both parties finished questioning Griffin, the Circuit Court considered questions submitted by the jury. One of the questions was: "[H]ave you seen [Munson] angry before to strike out at someone to confrontation?" Defense counsel objected to this question and the Circuit Court refused to ask it, stating:

> Well, I think this may raise 404(b) issues. Counsel, I think, opened the door actually to some comment from [Griffin] having to do with, I believe she stated [Munson]

4

attacking her mother, but it was in response to some type of question that was asked by the defendant. But I don't think we should revisit that and open up the door to either that particular issue again, or others that she may know about. So that [question] would have to be denied.

## II.

Munson testified in her own defense at trial. Munson testified that she and Griffin had been friends until the January 2009 incident. During that incident, Munson intervened in an argument between Kapu and Griffin, which led to Munson arguing with Kapu. The argument between Munson and Kapu caused neighbors to call the police.

In the early morning on March 21, 2009, Munson asked a friend to drive her to Griffin's residence. Munson had been drinking and felt a "little bit buzzed." Munson called Griffin's telephone, but there was no answer.

According to Munson, upon arriving at Griffin's residence, she knocked on the door, called Griffin's name, and thought she heard Griffin say "yeah." Munson then opened the door and walked into the apartment. She went into the bedroom and began talking to Griffin. However, when Munson began criticizing Kapu, Griffin became upset. Munson testified that Griffin got out of bed, holding her infant daughter, and grabbed Munson by the throat. Munson defended herself by pushing Griffin away and left the apartment.

## III.

The jury found Munson guilty as charged of first-degree burglary (Count 1) and third-degree assault (Count 2). The Circuit Court sentenced Munson to ten years of imprisonment on Count 1, with a mandatory minimum term of thirty months as a repeat offender, and a concurrent term of one year of imprisonment on Count 2. The Circuit Court filed its Judgment of Conviction and Sentence on April 7, 2010, and this appeal followed.

DISCUSSION

I.

In cross-examining Griffin, defense counsel elicited testimony that during the January 2009 argument, Munson had physically attacked Griffin's mother.  Griffin's testimony was directly responsive to defense counsel's questions.  Defense counsel did not object to Griffin's testimony or move to strike it.  Nevertheless, on appeal, Munson argues that the Circuit Court erred in allowing this testimony.  Munson contends that the testimony was irrelevant and unduly prejudicial and that the Circuit Court should have ordered it stricken as inadmissible "bad act" evidence pursuant to Hawaii Rules of Evidence (HRE) Rule 404(b) (Supp. 2011).[4/]  We disagree.

Although Munson frames the issue as an error by the Circuit Court in "allowing" Griffin's testimony, it was Munson, through the questioning of her counsel, that introduced the challenged testimony.  The Circuit Court cannot be faulted for permitting defense counsel to ask the questions that elicited Griffin's testimony on cross-examination.  As noted, defense counsel did not object to Griffin's answers or move to strike the testimony.  We conclude that Munson waived any objection to the Circuit Court's failure to strike Griffin's testimony.  See State v. Hoglund, 71 Haw. 147, 150-51, 785 P.2d 1311, 1313 (1990) (refusing to consider, for the first time on appeal, an issue that the defendant failed to properly raise at trial); State v. Crisostomo, 94 Hawai'i 282, 290, 12 P.3d 873, 881 (2000) (concluding that the defendant waived hearsay argument by failing to object at trial); State v. Ildefonso, 72 Haw. 573, 584, 827

---

[4/] HRE Rule 404(b) provides in relevant part:

(b) Other crimes, wrongs, or acts.  Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible where such evidence is probative of another fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident.

P.2d 648, 655 (1992) ("Our review of the record reveals that [the defendant] did not raise this argument at trial, and thus it is deemed to have been waived.").

Assuming, arguendo, that Munson has not waived her challenge to Griffin's testimony, we reject Munson's claim that the testimony was inadmissible under HRE Rule 404(b). Griffin's testimony was relevant to a critical issue in the case -- whether Munson believed she had permission to enter Griffin's residence and thus had the requisite criminal intent to enter or remain unlawfully in Griffin's residence that was necessary to commit burglary. Griffin and Munson had been good friends prior to the January 2009 argument. Griffin's testimony that during the January 2009 argument, Munson not only argued with Griffin's fiancé, but attacked Griffin's mother, served to refute Munson's suggestion that she believed she had implied permission to enter Griffin's residence on March 21, 2009, based on their prior friendship.

Griffin's testimony that Munson had attacked her mother during the January 2009 argument was directly relevant to explaining the nature of the relationship between Griffin and Munson on the date of the charged burglary. In addition, Griffin's testimony was probative of Munson's intent in entering Griffin's residence, a pivotal, disputed issue in the case. We conclude that Griffin's testimony was admissible. See HRE Rule 404(b); State v. Clark, 83 Hawai'i 289, 300-03, 926 P.2d 194, 205-08 (1996) (concluding that prior incidents of domestic violence were admissible under HRE Rule 404(b) to show the context of the relationship between the defendant and the alleged victim); State v. Mars, 116 Hawai'i 125, 141, 170 P.3d 861, 877 (App. 2007) (concluding that defendant's prior conduct was admissible under HRE Rule 404(b) to show the defendant's intent); State v. Steger, 114 Hawai'i 162, 171-73, 158 P.3d 280, 289-91 (App. 2006) (same).

II.

Besides failing to object to or move to strike Griffin's testimony that Munson had attacked Griffin's mother, Munson also did not request a limiting instruction regarding this testimony. We reject Munson's contention that the Circuit Court committed plain error in failing *sua sponte* to give a limiting instruction regarding Griffin's testimony. Although Plaintiff-Appellee State of Hawai'i (State) concedes error on this point, the Hawai'i Supreme Court has held that "appellate courts have an independent duty 'first to ascertain that the confession of error is supported by the record and well-founded in law and second to determine that such error is properly preserved and prejudicial.'" State v. Veikoso, 102 Hawai'i 219, 221-22, 74 P.3d 575, 577-78 (2003) (citation omitted). In other words, the State's concession of error "is not binding upon an appellate court[.]" State v. Hoang, 93 Hawai'i 333, 336, 3 P.3d 499, 502 (2000) (internal quotation marks and citation omitted). As explained below, we conclude that the State's concession of error was not well taken.[5]/

In State v. Cabagbag, 127 Hawai'i 302, 315, 277 P.3d 1027, 1040 (2012), the Hawai'i Supreme Court recognized the prerogative of criminal defendants to make strategic trial decisions in holding that a trial court is not required to give a jury instruction on eyewitness identification "unless the defendant requests it." (Emphasis added.) In Cabagbag, the supreme court addressed the question of whether "a cautionary jury instruction regarding eyewitness identification should be required in any case in which eyewitness identification is a critical or central issue." Id. at 309, 277 P.3d at 1034 (internal quotation marks omitted). Prior precedents of the supreme court had held that the giving of such an instruction was within the discretion of the trial court. Id. In Cabagbag, the

---

[5]/ We note that the State's answering brief was filed before the Hawai'i Supreme Court's decision in State v. Cabagbag, 127 Hawai'i 302, 277 P.3d 1027 (2012), which is discussed infra.

8

supreme court overruled its prior precedents and held that "when eyewitness identification is central to the case, circuit courts must give a specific jury instruction upon the request of the defendant to focus the jury's attention on the trustworthiness of the identification." Id. at 313-14, 277 P.3d at 1038-39.[6/]

The dissenting opinion in Cabagbag would have imposed an obligation on the trial court to *sua sponte* give an eyewitness identification instruction, even if not requested by the defendant. Id. at 314 n.19, 315-16, 319-20, 277 P.3d at 1039 n.19, 1040-41, 1044-45. The Cabagbag majority refused to impose this obligation. The majority stated: "Our holding does not require a trial court to give the instruction unless the defendant requests it. This recognizes that a defendant may legitimately conclude, as a matter of trial strategy, that the instruction is not necessary or appropriate in a given case." Id. at 315, 277 P.3d at 1040 (footnote omitted) (emphasis added). The majority explained that permitting a defendant to make strategic decisions furthered the truth-seeking function, and it therefore "respectfully disagree[d] with the dissent's position that the instruction must be given whether requested or not." Id. The majority stated that "where the circumstances of the identification lend weight to its reliability, the defendant may wish to focus the jury's attention on other issues in the case." Id. at 316, 277 P.3d at 1041.

We conclude that the supreme court's reasoning in Cabagbag is instructive in deciding this case. Just as a defendant may legitimately decide, as a matter of trial strategy, to forgo requesting an instruction on eyewitness identification,

---

[6/] The supreme court gave this new rule prospective application. Cabagbag, 127 Hawai'i at 317, 277 P.3d at 1042. The court also held that a circuit court, in the exercise of its discretion, may give a specific eyewitness instruction if it believes the instruction is otherwise warranted. Id. at 314, 277 P.3d at 1039.

a defendant may legitimately decide, as a matter of trial strategy, to forgo requesting a limiting instruction on HRE Rule 404(b) evidence. Courts have recognized that a defendant's decision to forgo requesting a limiting instruction for "bad act" evidence encompassed by HRE Rule 404(b) may be a legitimate tactical decision to avoid drawing attention to or reemphasizing the evidence. E.g., State v. Yarbrough, 210 P.3d 1029, 1041 (Wash. Ct. App. 2009) (concluding that failure to request a limiting instruction on "bad act" evidence "may be a legitimate tactical decision not to reemphasize damaging evidence"); Commonwealth v. Delp, 672 N.E. 2d 114, 118 (Mass. App. Ct. 1996) ("Counsel's decision not to request a limiting instruction [on "bad act" evidence] may have been a tactical move not to highlight the evidence."); United States v. Barnes, 586 F.2d 1052, 1059 (5th Cir. 1978) (concluding that defense counsel "may refrain from requesting a[] [limiting] instruction in order not to emphasize potentially damaging evidence," in support of its holding that the trial court did not commit plain error in failing *sua sponte* to give a limiting instruction on "bad act" evidence); State v. Schaim, 600 N.E. 2d 661, 670 n.9 (Ohio 1992) (declining to impose a duty on the trial court to give a limiting instruction on "other act" evidence when the instruction is not requested because "the decision not to request a limiting instruction is sometimes a tactical one").

In this case, Griffin's reference to Munson attacking Griffin's mother was brief and devoid of details. As a matter of legitimate trial strategy, defense counsel may have decided not to request a limiting instruction to downplay and avoid highlighting the evidence. Consistent with the recognition of the defendant's prerogative to make strategic choices, HRE Rule 105 (1993) only requires a court to give a limiting instruction "upon request." We conclude that the Circuit Court did not commit plain error in failing *sua sponte* to give a limiting instruction regarding Griffin's testimony.

10

III.

Munson argues that there was insufficient evidence to support her convictions for first-degree burglary and third-degree assault. With respect to her first-degree burglary conviction, Munson contends that there was insufficient evidence to show that: (1) she intentionally entered or remained unlawfully in Griffin's residence; and (2) she had the intent to commit therein a crime against a person or property. With respect to her third-degree assault conviction, Munson contends that there was insufficient evidence to negate her claim of self-defense. We conclude that Munson's arguments are without merit.

In evaluating the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution. State v. Tamura, 63 Haw. 636, 637, 633 P.2d 1115, 1117 (1981). "The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact." State v. Richie, 88 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998) (block quote format and citation omitted). We give "full play to the right of the fact finder to determine credibility, weigh the evidence, and draw justifiable inferences of fact." State v. Yabusaki, 58 Haw. 404, 411, 570 P.2d 844, 848 (1977) (block quote format and citation omitted).

Griffin and Munson gave conflicting testimony on what happened during the incident in question. However, in reviewing a sufficiency of the evidence claim, we "will not attempt to reconcile conflicting evidence, or interfere with a jury decision based on the credibility of witnesses or the weight of the evidence." State v. Yamada, 116 Hawai'i 422, 442, 173 P.3d 569, 589 (App. 2007) (block quote format and citation omitted). "It is the province of the jury, not the appellate courts, to determine the credibility of witnesses and the weight of the

11

evidence." State v. Smith, 106 Hawai'i 365, 372, 105 P.3d 242, 249 (App. 2004).

When viewed in the light most favorable to the State, the evidence showed that in January 2009, there was a heated argument involving Griffin, her fiancé Kapu, and Munson, which resulted in the police being called. During this argument, Munson argued with Kapu and attacked Griffin's mother, and Kapu told Munson to leave his and Griffin's residence. After this argument, Griffin intentionally had no contact with Munson. At about 2:00 a.m. on March 21, 2009, while Griffin was sleeping and the lights were off, except for an oven light in the kitchen, Munson entered Griffin's apartment without being invited or receiving any permission to enter. Munson was drunk. Munson awakened Griffin by very loudly calling her name. Griffin was afraid because Munson appeared aggressive as if she wanted to fight. Griffin asked Munson to leave or they were "going to get into it," but Munson refused to leave. While carrying her baby, Griffin attempted to walk past Munson to call the police. Without provocation, Munson suddenly attacked Griffin by grabbing Griffin's neck and choking her. After Griffin was able to struggle free, Munson left the apartment and departed the scene in a car that had been positioned to quickly exit the parking lot. As the result of Munson's attack, Griffin suffered pain and sustained injuries to her neck.

We conclude that there was substantial evidence to show that Munson intentionally entered or remained unlawfully in Griffin's residence and that Munson did so with the intent to commit therein a crime against a person, namely, assault or harassment against Griffin. We also conclude that there was substantial evidence, based on Griffin's version of events, to negate Munson's claim of self-defense. Accordingly, there was sufficient evidence to support Munson's convictions.

CONCLUSION

We affirm the Circuit Court's Judgment of Conviction and Sentence.

DATED:  Honolulu, Hawai'i, November 15, 2012.


On the briefs:


Jennifer D.K. Ng
Deputy Public Defender
for Defendant-Appellant

Kristin Coccaro
Deputy Prosecuting Attorney
County of Maui
for Plaintiff-Appellee

*Craig H. Nakamura*
Chief Judge

Associate Judge

Associate Judge